IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

D.C., individually and on behalf
of J.C., a minor,

   CASE NO.:

 Plaintiffs,

v.

BROWARD COUNTY SCHOOL BOARD

 Defendant.
_____/

**COMPLAINT FOR ENFORCEMENT AND EXTENSION OF MEDIATED SETTLEMENT AGREEMEENT, INJUNCTIVE RELIEF TO REINSTATE LAST AGREED UPON IEP AND JURY DEMAND FOR FEES AND DAMAGES**

COMES NOW, Plaintiffs, D.C., individually and on behalf of J.C., a minor, by and through the undersigned counsel and sues the BROWARD COUNTY SCHOOL BOARD and hereby alleges as follows:

**PARTIES**

1. The Plaintiffs, D.C., ("parent") is an individual, *sui juris*, who resides and did reside in BROWARD County, Florida, at all times relevant.

2. The Plaintiffs, J.C., is a minor who resides and did reside in BROWARD County, Florida, at all times relevant.

3. The Defendant, BROWARD COUNTY SCHOOL BOARD, ("Board" or "District") is a corporate and governmental agency duly empowered by the constitution and statutes of the state of Florida to administer, manage, and operate the Broward County Public Schools ("BCPS.")

4. The District receives state and federal funding for the education of children with disabilities. The Board meets the definition of a public entity under 42 U.S.C. § 12131.

## JURISDICTION AND VENUE

5. Jurisdiction for this action vests pursuant to 42 U.S.C. § 12131 for claims brought under the Americans with Disabilities Act of 1990; 29 U.S.C. § 794, for claims brought under Section 504 of the Rehabilitation Act of 1973 and for violations of J.C., and J.C.'s civil rights; and the District Court's pendent jurisdiction over the state claims alleged, which arise out of the same operative facts and circumstances.

6. Venue for this action lies pursuant to 28 U.S.C. § 1391(b) in that the Board resides in the judicial district and the cause of action accrued in the judicial district.

## GENERAL ALLEGATIONS

7. J.C. is currently fifteen (15) years old.

8. J.C. is currently in ninth grade at Cypress Bay High School, a Broward County public school.

9. D.C. is the natural parent and mother of J.C.

10. BCPS receives state and federal funding for education.

11. J.C. was found eligible for exception student education (ESE) services and remains eligible to date.

12. J.C.'s current eligibilities include Autism Spectrum Disorder (ASD), Intellectual Disability (IND), and Language Impairment (LI). J.C. is also diagnosed with Epilepsy and Angelman's Syndrome.[1]

---

[1] Angelman syndrome is a complex genetic disorder that primarily affects the nervous system. Characteristic features of this condition include delayed development, intellectual disability, severe speech impairment, seizures and problems with movement and balance (ataxia).

13. J.C. has an individualized education plan (IEP) and a positive behavior intervention plan (PBIP) that identify his educational needs and the supports and services the district is required to provide with fidelity in the least restrictive environment.

14. J.C. is essentially nonverbal and communicates most effectively with high tech Augmentative and Alternative Communication (AAC).[2]

15. AAC includes communication devices, systems, strategies, and tools that replace natural speech. AAC helps a person communicate when they cannot rely on speech.

16. The first "A" in AAC stands for Augmentative Communication or adding to or supplementing speech (eg. sign language, symbol boards, keyboards). This can make a message clearer to the listener and enable a person with limited speech the opportunity to effectively communicate across all settings.

17. The second "A" in AAC stands for Alternative Communication. This is when someone is not able to speak and needs a different way to communicate.

18. J.C.'s receptive language (input from others) is stronger than his expressive language (output to others).

19. J.C. needs robust language supports and a means to express language without relying upon speech.

20. To replace speech, J.C. utilizes a high tech AAC speech generating device, specifically, ProLoQuo2G.

---

[2] AAC is communication devices, systems, strategies, and tools that replace natural speech. AAC helps a person communicate when they cannot rely on speech. JC's communication is through Proloquo2Go, a robust language system.

21. This is the specific program and device the parties agreed to utilize in the school setting.

22. It was recognized and agreed to by the district, that in order for J.C. to access his education, he would need to utilize a high-tech AAC speech generating device, specifically the ProLoQuo2Go.

23. J.C. is entitled to access effective communication at school per Title II of the ADA and Section 504 of the Rehabilitation Act.

24. In 2019, J.C.'s parent filed a request for a state mediation to address ongoing concerns related to the BCPS's failures to use high tech AAC speech generated devices that would enable J.C. access to effective communication in the school setting, his lack of meaningful progress, and for other violations of the Individuals with Disabilities Education Act (IDEA) and Section 504 of the Rehabilitation Act and for failure to provide a free appropriate public education (FAPE).

25. On May 7, 2020, the parties entered into a mediated settlement agreement (MSA) to resolve these issues. The MSA is attached hereto as **Exhibit A**.

26. The MSA is comprehensive and identifies what J.C. needs to be successful in the school environment. It highlights the need for education, training, modeling and monitoring of the professionals working with J.C.

27. The MSA reflects that for J.C. to access his education, he would need to use a high tech AAC speech generated device, specifically ProLoQuo2Go, with fidelity and be supported

throughout his day, across all settings by trained effective communication partners[3] modeling with aided language input[4] and conducting Environmental Communication Teaching (ECT) trainings.[5]

28. The MSA requires consultation, collaboration, data collection, observations, modeling, comprehensive training and monitoring to ensure implementation is occurring with fidelity. These requirements are material to the agreement between the parties and necessary for the student to be successful in the school setting.

29. The MSA is further predicated on every individual staff member doing their part to make the agreement work, with the goal that J.C. makes meaningful educational progress in the areas of communication, subject area curriculum, his individual goals, and to successfully access peers in the general education school setting.

30. The MSA is also predicated on the understanding that the staff working with J.C. and those staff members monitoring J.C. would be able to use and model the use of ACC and ProLoQuo2Go on a regular basis and with fidelity.

31. In compliance with the MSA, on May 8, 2020, an independent AAC expert was selected and employed by the district. The expert is Kelly Fonner. Mediated settlement agreement at pg. 3, paragraph 1.

---

[3] Communication partners are the people around the AAC user, who will interact with them. Communication partners wait, listen and respond. Effective communication partners are consistent, reliable, engaging and interacting, patient and always make AAC available.

[4] Aided language input is a communication strategy that requires a communication partner to teach symbol meaning and model symbolic communication by pairing speech with graphic symbols.

[5] Environmental Communication Teaching (ECT) is a series of workshops designed to increase communication device implementation with students in their educational environments. The training format is set up to develop skill sets of teachers, SLPs, and paraprofessionals and other staff working with a student in their school environments.

32. Pursuant to the MSA, the parties also revised the Individualized Education Plan (IEP) and the goals contained therein to ensure that the plan was designed to meet the unique needs of J.C. Mediated settlement agreement at pg. 3, paragraphs 2 & 3.

33. The IEP meeting was had, and the goals were updated to everyone's satisfaction. The final IEP dated June 4, 2020 is attached hereto as **Exhibit B**.

34. The MSA was implemented throughout the 2020 Summer. Although J.C. did not receive the instructional hours he was entitled to over the summer, the instruction he did receive was with staff who were trained and educated about AAC and the ProLoQuo2Go application.

35. Since summer school ended, the district has repeatedly breached the MSA.

36. Specifically, from September 9, 2020 through January 12, 2021, J.C. did not receive any direct instruction from an ESE teacher as required by the MSA. This is a material breach resulting in harm to the student.

37. J.C.'s paraprofessionals and substitute teachers, teaching him from September 9, 2020 through January 12, 2021, were not sufficiently educated or trained on AAC and did not know how to use the ProLoQuo2Go application. They did not regularly use the symbols in his Proloquo2Go language to instruct or support his learning. This is a material breach resulting in harm to the student.

38. J.C.'s paraprofessionals and substitute teachers, instructing him from September 9, 2020 through January 12, 2021, did not know how to provide J.C. aided language input[6] per the MSA. This is a material breach resulting in harm to the student.

---

[6] Aided language input is a communication strategy that requires a communication partner to teach symbol meaning and model symbolic communication by pairing speech with graphic symbols and adding one more word to the sentence length of the communicator. It was required in the MSA.

39.     J.C.'s paraprofessionals and substitute teachers, teaching him from September 9, 2020 through January 12, 2021, did not participate in the Environmental Communication Teaching (ECT) trainings[7] per the MSA. This is a material breach resulting in harm to the student.

40.     The district is not following the initial and only "master plan" created for J.C. by Kelly Fonner, the independent AAC Consult, as per the MSA. This is a material breach resulting in harm to the student.

41.     The district did not utilize access point curriculum[8] in each subject area nor did the district have an ESE teacher instructing him in those classes, as required by Florida Department of Education and as anticipated by the MSA. This is a material breach resulting in harm to the student.

42.     J.C. was not provided his accommodations with fidelity nor were the goals implemented as written in his June 4, 2020 IEP as required per the MSA. These are material breaches resulting in harm to the student.

43.     Upon information and belief the district has also failed to implement the following terms of the agreement:

    a. training before the start of and throughout the 2020-2021 school year with all staff members working with the student;

    b. individual training, modeling, observations, and collaboration with the AAC expert;

---

[7] Environmental Communication Teaching (ECT) is a series of workshops designed to increase communication device implementation with students in their educational environments. The training format is set up to develop skill sets of teachers, SLPs, and paraprofessionals and other staff working with a student in their school environments. It was required in the MSA.

[8] Access points are academic expectations written specifically for students with significant cognitive disabilities. Access points reflect the essence or core intent of the standards that apply to all students in the same grade, but at reduced levels of complexity.

  c. AAC expert review and feedback of videos of individual staff members and instructors;

  d. monitoring of implementation by AAC expert;

  e. observation, data collection and monitoring of each staff by administration;

  f. monitoring by each district support program specialist, also known as an exceptional student learning support field coach, including for Assistive Technology (AT), Behavior, Speech Language Pathologist, and Curriculum, of each staff member working with J.C.;

  g. the development and use of a monitoring tool/ checklist, fidelity checks and other data collection required in the MSA.

44. In addition, the district is violating the MSA by moving onsite visits to a virtual platform without consent or agreement from the parent; is not utilizing a home note as agreed upon in the MSA; and the parent had to purchase and provide a second iPad so that instructors could model the use of ProLoQuo2Go application on an iPad device.

45. There are some conditions that at first look appear as if the district was in compliance with the MSA. For example, the district was required to provide visual aids,[9] in this case a visual schedule, so that the student would know what to expect each day. However, the visual schedule sent home has the wrong schedule on it, rending the visual schedule useless. This is just one example of the types of illusory compliance from the district.

46. The cumulative impact of partial compliance, partial implementation and outright failures to comply with the MSA establish a material breach of the MSA. The direct impact on J.C. is clear and impacts J.C.'s ability to access his education, his school environment, his peers, his curriculum, make any meaningful progress or receive meaningful benefit from the supports

---

[9] Visual aids are those instructional devices which are used in the classroom to encourage learning, help a student with organization and preview what to expect during the school day.

and services contained within the MSA. The breach also impacts J.C.'s ability to gain future employment, independent living skills and his ability to communicate with others. From September 9, 2020 through January 12, 2021 J.C. received, on average, less than one hour of direct instruction, out of a six-hour school day. He received even less instructional time with a teacher who instructed him while using his AAC device and the ProLoQuo2Go application. The majority of his instructional time was with a single speech language pathologist (SLP), and single occupational therapist (OT) who appear to be the only professionals able to utilize the AAC and the ProLoQuo2Go.

47. J.C. cannot access his education without prompt enforcement of the MSA.

48. The MSA is enforceable in any State court of competent jurisdiction or in any district court of the United States. See Mediated Settlement Agreement at paragraph 1b.

49. The MSA was written during the Covid-19 pandemic and with virtual learning and other known challenges. There is no reason to believe the pandemic or distance learning are the cause of any breach.

50. Rather than address these breaches, the District has instead drafted a new IEP which undermines the MSA. The meeting was held, and the IEP was drafted without parent input. The new IEP specifically removes the requirement for staff to utilize the ProLoQuo2Go application with fidelity, removes other AAC requirements and reduces the supports and services mediated for and agreed to in the MSA. The new IEP dated January 12, 2021 is attached hereto as **Exhibit C**.

51. The student's biological father is in a coma due to COVID 19. The school staff was overheard suggesting that J.C. be removed from his current school location to another school, near

his mother's house, with staff that have no knowledge of the MSA or the requirements contained therein in anticipation of a poor medical outcome for his father.

52. D.C. on behalf of J.C. has performed all conditions precedent prior to the filing of the instant action.

53. D.C. on behalf of J.C. has engaged the Disability Independence Group, Inc. to represent them and are obligated to pay a reasonable fee for their services.

## COUNT 1
## BREACH OF MEDIATED SETTLEMENT AGREEMENT

54. Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 53 of the Complaint as if fully set forth herein.

55. Plaintiffs entered into the mediated settlement agreement with a meeting of the minds of each parties' obligations and responsibilities governed thereby.

56. The mediated settlement agreement set forth the essential terms of the agreement to resolve the issues between the parties, with sufficient specificity, and ratified the agreement by signatures and with their actions.

57. The district was in partial compliance for the first several months after the agreement was signed, but quickly began to violate the agreement.

58. The culminating impact of the multiple breaches is material and are having a direct impact on J.C.'s ability to access his education, educational environment, or make any meaningful progress during the school day.

59. The district is now attempting to circumvent the provisions of the agreement by drafting a new IEP without meaningful parent participation or input.

60. Thus, the Plaintiffs are seeking to enforce the agreement as written, extend the MSA agreement timeframe and have his last agreed upon IEP implemented until a new IEP meeting can be scheduled to reinstate the MSA requirements back into a new IEP document.

**WHEREFORE**, Plaintiffs, D.C. individually and on behalf of J.C., respectfully request this Court to declare the actions and inactions of the Defendant, BROWARD COUNTY SCHOOL BOARD, to be a breach of the mediated settlement agreement, issue an order enforcing the mediated settlement agreement, extending the deadlines contained within, implement his last agreed upon IEP and award Plaintiffs' attorneys' fees, costs and expenses incurred in this matter, and for such further relief as the court deems just and equitable.

## COUNT 2
## VIOLATION OF TITLE II OF THE AMERICAN DISABILITIES ACT

61. Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 53 of the Complaint as if fully set forth herein.

62. The ADA requires that Title II entities (State and local governments) communicate effectively with people who have communication disabilities. The goal is to ensure that communication with people with these disabilities is equally effective as communication with people without disabilities.

63. Plaintiffs further allege that the District failed to provide J.C. a means to effectively communicate while accessing his education in violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131–12165.

64. The District is a public entity and recipient of federal financial assistance and is therefore subject to Title II.

65. The ADA provides a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities. 42 U.S.C. § 12101(b)(1) & (2).

66. The ADA requires that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

67. The district's agreement in the MSA to utilize the AAC device, an auxiliary aide approved by the district, the district's failure to utilize the AAC device, and then the district's act of removing many of the supports for the AAC device in the next IEP attempting to circumvent the MSA is exactly the type of discrimination the ADA and its amendments aim to prevent and specifically prohibit.

68. Separate and apart from the district's obligation to provide FAPE, without the use of an AAC device, J.C. is unable to participate equally to all others in public school facilities. Fry v. Napoleon Community Schools, 137 S. Ct. 743, 756 (2017). J.C. is seeking non-discriminatory access to this public institution and its programs and activities. Id.

69. Further, the regulations implementing the ADA require that "a public entity shall administer services, programs and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d).

70. As public entities and instrumentalities of the state, the District is prohibited from providing "a qualified individual with a disability with an aide, benefit or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided others." 28 CFR 35.130(b)(1)(iii).

71. The District has discriminated against J.C. in violation of the ADA on the basis of his disabilities by failing to utilize an AAC device consistently and with fidelity resulting in him being excluded and denied access to his education and his environment and the supports and services offered by the district. It is unnecessarily and foreseeably isolating to leave J.C. with no means to effectively express himself.

72. J.C. has suffered regression and is not receiving the benefit of a meaningful education.

73. The actions of the District were done with deliberate indifference to the rights of J.C., and his parent, and as such, the Plaintiffs are entitled to damages for the injuries as a result of this discrimination.

**WHEREFORE**, Plaintiffs, D.C. individually and on behalf of J.C., respectfully request this Court to declare the actions of the Defendant, BROWARD COUNTY SCHOOL BOARD, violate the Americans with Disabilities Act, issue a permanent injunction enjoining the Defendant from discriminating against students with disabilities, enforcement of the MSA, reinstatement of the June 4, 2020 IEP and award Plaintiffs' attorneys' fees, costs and expenses incurred in this matter and for such further relief as the court deems just and equitable.

## COUNT 3
## SECTION 504 OF THE REHABILITATION ACT OF 1973 29 U.S.C. § 794(a)

74. Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 53 of the Complaint as if fully set forth herein.

75. Plaintiffs further allege that J.C. has a disability that substantially limits one or more major life activities and is a person with a disability under Section 504 of the Rehabilitation Act, as amended. See 29 U.S.C. §706(8).

76. J.C. is otherwise qualified under section 504 of the Rehabilitation Act because he met the essential eligibility requirements of the District at all times material hereto.

77. Defendant is a recipient of federal financial assistance.

78. The District's failure to utilize an AAC is a violation of the Plaintiff's rights under Section 504 of the Rehabilitation Act and is discriminating against the Plaintiff because of his disability. Fry v. Napoleon Community Schools, 137 S. Ct. 743, 756 (2017).

79. The Defendant has discriminated against J.C. in violation of Section 504 of the Rehabilitation Act on the basis of his disabilities by not utilizing J.C.'s approved AAC device and further isolating J.C. from his peers, or providing him equal access to his education, or any meaningful benefit of the programs and services offered by the district.

80. As a result of the Districts ongoing violations, J.C. and his parent continue to be harmed.

81. The actions of the District were done with deliberate indifference and gross misjudgment to the rights of J.C., and his parent, and as such, the Plaintiffs are entitled to damages for their injuries as a result of the actions and inactions of the district.

**WHEREFORE**, Plaintiffs, D.C., individually and on behalf of J.C., respectfully pray that this Court grant the following relief against the District, including entering a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that the Defendants' practices have subjected Plaintiff to discrimination in violation of Section 504 of the Rehabilitation Act permanently enjoining Defendants from any practice which will deny Plaintiff equal access to and benefit from Defendants' services, enforce MSA, reinstate the June 4, 2020 IEP, award compensatory damages, reasonable costs and attorneys' fees, and any other relief this court deems necessary and appropriate.

## COUNT 4
## FLORIDA EDUCATIONAL EQUITY ACT

82. Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 53 of the Complaint as if fully set forth herein.

83. The Florida Educational Equity Act (FEEA) prohibits discrimination against students in the Florida public school system on the basis of race and disability. s. 1000.05, F.S.

84. No person shall be excluded from participation in, be denied benefits of or be subjected to discrimination under any public education program or activity.

85. The discriminatory acts and omissions by the Defendant resulted in the exclusion from participation in, benefits and access to some of the public-school programs.

86. As a result of the Defendant's actions, the Plaintiffs suffered damages.

**WHEREFORE**, Plaintiffs, D.C., individually and on behalf of J.C., demand judgment against the Defendant, BROWARD COUNTY SCHOOL BOARD, for damages, together with their attorney's fees and costs, and such further relief as the court deems just and equitable.

## JURY DEMAND

**A TRIAL BY JURY IS DEMANDED FOR ALL ISSUES TRIABLE AS OF RIGHT BY A JURY.**

Dated this 4th day of March, 2021.

> By: /s/ *Stephanie Langer*
> Stephanie Langer, Esq.
> FL BAR NO.: 149720
> DISABILITY INDEPENDENCE GROUP, INC.
> 2990 Southwest 35th Avenue
> Miami, Florida 33133
> Phone (305) 669-2822
> Facsimile (305) 442-4181
> SLanger@justdigit.org
> aa@justdigit.org